IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| AKIL RASHIDI BEY *ex rel* ) <br> AIKIDO GRAVES, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> RICHMOND REDEVELOPMENT ) <br> AND HOUSING AUTHORITY, *et al.*, ) <br> ) <br> Defendants. ) | Action No. 3:13CV464-HEH |

## <u>MEMORANDUM OPINION</u>
(Granting Plaintiff's Motion to Proceed *In Forma Pauperis* and Dismissing in Part Plaintiff's Complaint Pursuant to 28 U.S.C. § 1915(e)(2))

THIS MATTER is before the Court on Plaintiff Akil Rashidi Bey *ex rel* Aikido Graves's ("Plaintiff") Motion to Proceed *In Forma Pauperis* (ECF No. 1), filed on July 22, 2013. In the accompanying Order, the Court grants Plaintiff's motion and permits him to proceed in this case without paying the Court's filing fee. For failing to state sufficient grounds for relief, the Court will dismiss the bulk of Plaintiff's claims. It appears that Plaintiff has sufficiently alleged a violation of his procedural due process rights under 42 U.S.C. § 1437d and 24 C.F.R. § 982.553. Thus, the Court will allow Plaintiff to proceed on that claim, but without prejudicing Defendants' right to move for dismissal on alternative grounds.

1

## I. BACKGROUND[1]

Plaintiff commenced this action and names as defendants the Richmond Rehabilitation and Housing Authority ("RRHA"); RRHA employees Willitte C. Williams ("Williams"), Tammy L. Grubb ("Grubb"), and Calandra M. Trotter ("Trotter"); Genesis Properties ("Genesis"); Jefferson Townhomes ("Jefferson"); and Jefferson employees Vanessa Dieterly ("Dieterly") and Joy Warfield ("Warfield"). Liberally construing the Complaint in Plaintiff's favor, the relevant facts are as follows.

Plaintiff is "Moorish American Moslem." (Compl. at 2:13-14.) He and his family have received public housing assistance since 1999. (*Id.* at 3:5.) Plaintiff moved to Richmond, Virginia, from Prince William County, Virginia ("PWC"). He ascribes this move to the fact that "PWC prosecution" was preventing him from returning to his house at 12544 Poplar Court near Woodbridge, Virginia, (*id.* at 3:16-17), and because of discrimination by "PWC Housing" after Plaintiff reported that his children no longer lived in his house, (*id.* at 3:21-4:2). Plaintiff knew that "time was growing thin on the [S]ection 8 voucher for PWC," and so he transferred his Section 8 voucher and relocated to Richmond. (*Id.* at 4:7-9.) Plaintiff moved to a Jefferson property located

---

[1] As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes Plaintiff's well-pleaded allegations to be true and views all the facts in the light most favorable to Plaintiff. *See Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Also, because Plaintiff proceeds *pro se*, the Court endeavors to liberally construe his allegations, however inartfully pleaded. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estell v. Gamble*, 429 U.S. 97, 104-105 (1976)).

at 710 Mosby Street in Richmond, where his wife eventually joined him. (*Id.* at 4:12-15.)

Plaintiff claims that the "federal court defendants" conspired to make a "severe false statement" about his son sexually abusing his siblings so that his son would be placed in the custody of social services. (*Id.* at 4:20-23.) Plaintiff states that this report is an example of the "disinformation and tactics" that the "Commonwealth agencies [conspired to use] to cause [him] burden and strife." (*Id.* at 5:12-19.) Furthermore, Plaintiff contends that these actions were taken because of his Moorish American Moslem affiliation, (*id.* at 5:20-21), and he cites numerous past and ongoing legal actions in which he is involved, (*id.* at 6:1-16). He asserts that the goal "with someone like [him] would be to pile up so many legal issues" that he could not confront each one individually. (*Id.* at 5:22-6:2.) As an example, Plaintiff alleges that a "15 month JDR court process [has] been turned into a four year process" as part of the alleged conspiracy against him. (*Id.* at 7:2-4.)

Plaintiff further claims that RRHA failed to give him timely notice of appointments, (*id.* at 7:19-20), and that he was never given a copy of the criminal report used to justify the termination of his Section 8 voucher, (*id.* at 7:22-8:1). On June 12, 2013, Plaintiff's wife, on his behalf, attended a recertification meeting with Defendant Williams; however, the meeting was unable to proceed due to Plaintiff's absence. (*Id.* at 8:6-13.) Plaintiff contends that he gave his wife power of attorney to

3

handle the matter, but Williams indicated that his presence was required. (*Id.* at 8:13-14.) He further claims that he could not attend out of fear of being unlawfully arrested. (*Id.* at 6:9-19.) The recertification meeting was rescheduled for June 21, 2013. (*Id.* at 8:6-9:2.) Plaintiff's wife later discovered that she had a conflict on that date, and unsuccessfully attempted to contact Williams to reschedule. (*Id.* at 9:1-4.) Plaintiff's wife finally reached Williams on June 25, 2013. (*Id.* at 9:4-6.) Williams and her supervisor, Defendant Grubb, then told Plaintiff's wife that his Section 8 voucher would be terminated if he did not show up for the meeting on June 26, 2013. (*Id.* at 9:7-9.)

Plaintiff did not attend the meeting on June 26, 2013, because he "knew that the RRHA workers were going to have [him] setup and unlawfully arrested" and because he "didn't receive Due Process about the time" of the meeting. (*Id.* at 9:11-13.) While Plaintiff's wife was awaiting Williams's decision, a police officer asked if she knew Plaintiff's whereabouts. (*Id.* at 9:18-20.) After his wife informed the officer that she did not, Plaintiff's Section 8 voucher was terminated.[2] (*Id.* at 9:22-10:1.)

Plaintiff contends that the termination of his Section 8 voucher was unlawful and that it led to his eviction by Jefferson. (*Id.* at 12:33-35.) He asserts that he has

---

[2] Plaintiff provided numerous termination letters from RRHA, but in the letter dated June 26, 2013, RRHA explained that he had violated 24 C.F.R. § 982.521, adding in bold font, "The Participant must not engage in drug-related criminal activity or violent activity, including criminal activity by any family member." (ECF No. 1, Attachment No. 8) (misspellings corrected).

never been provided with the criminal record report used to justify the termination of his housing assistance, as is required by statute. Plaintiff also alleges that Trotter, an "appeal compliance officer" with RRHA, refused to produce a copy of the criminal report at an appeal, and that he has a recording of Trotter "admitting they violated [his] rights." (*Id.* at 19:4-5.) Plaintiff claims that one informal recording shows Trotter saying that Jefferson "based their decision [on the] RRHA termination letter," but that another recording shows Trotter denying that the Section 8 termination was the basis for Jefferson's eviction. (*Id.* at 19:16-21.)

Plaintiff alleges that Jefferson conspired with RRHA to evict him from their property, at least in part, because Plaintiff and his wife refused to sign an addendum to their lease.[3] Plaintiff maintains that he was under no obligation to sign the addendum, and that because Jefferson could not "collect more money" from him, they retaliated via the eviction notice.[4] (*Id.* at 14:18-21.) Furthermore, Plaintiff claims his eviction

---

[3] Plaintiff provided copies of two addenda with the Complaint. (ECF No. 1, Attachment No. 14.) Jefferson allegedly issued these proposed addenda and they appear to include the terms for renewal of a lease on a month-to-month basis and on a twelve-month basis. Because the forms appear to be renewal forms, the tenant could have renewed the lease by signing either form or vacate the unit.

[4] On July 2, 2013, Jefferson Townhomes issued an eviction notice indicating that Plaintiff and his wife had failed to comply with Page 2, Section 6 of the lease, which states:

> The Tenant shall not use, or permit to be used by his family, employees, guests or invitees, the leased premises or any common areas for any unlawful purpose, or do or permit any unlawful act in upon the leased premises or any common areas. Tenant, any members of the Tenant household, employees, guests, or invitees, shall not engage in criminal activity including drug related activity, on or near the complex premises. This includes the use, attempted use, possession, manufacture, sale or distribution of an illegal controlled substance (as defined by local, state, or

was "based on the fact that [he] didn't get a chance to dispute any criminal background report that [he was] supposed to be provided a copy of." (*Id.* at 13:7-10.) He contends that his eviction was unlawful because Jefferson and Genesis relied on RRHA's reasoning and failed to provide him with a copy of the criminal record used. (*Id.* at 18:10-17.)

On July 4, 2013, Plaintiff sent a letter to RRHA and Jefferson requesting "to be removed from the [S]ection 8 voucher program and from the lease at [] 710 Mosby Street . . . under protest, duress, threat, and coercion . . . ." (ECF No. 1, Attachment No. 8, Pl. App. Req., July 4, 2013.) In that letter, Plaintiff notes his objection to the termination of his assistance and states that he will exercise his right to appeal. (*Id.*) In a response dated July 10, 2013, RRHA informed Plaintiff that he was granted an informal appeal hearing set for July 16, 2013, at 10:00 a.m. (ECF No. 1, Attachment No. 8, Def. RRHA Letter, July 10, 2013.) Plaintiff responded on July 12, 2013, in a

---

federal law). Tenant, any member of the Tenants household, employees, guests, or invitees shall not engage in acts of violence or threats of violence, including, but not limited to, the carrying or displaying of firearms or any other dangerous weapons, or the unlawful discharge of firearms on or near the complex premises. A single violation of the above provision shall be deemed a serious violation and good cause of termination of tenancy. Such violation may be evidenced upon the admission to or conviction of criminal activity. Also, in the case of illegal drug activity, unless otherwise provided by law, proof of violation shall not require criminal conviction, but shall be a preponderance of the evidence. The Tenant will cooperate with the Landlord and furnish whenever requested, a criminal record on the Tenant and any members of the household.

(ECF No. 1, Attachment No. 8, Def. Jefferson Notice to Vacate).

letter with the same text as the July 4 appeal request. (ECF No. 1, Attachment No. 8, Pl. App. Req., July 12, 2013.) The next day, Plaintiff submitted a request for materials, namely a copy of the criminal report used by RRHA, and also stated that he would not be attending the appeal hearing. (ECF No. 1, Attachment No. 8, Pl. Request for Bill of Particulars, July 13, 2013.)

Plaintiff then commenced this action, filing his Complaint on July 22, 2013.

## II. STANDARD OF REVIEW

The federal *in forma pauperis* statute, 28 U.S.C. § 1915, grants indigent plaintiffs the privilege of commencing an action in federal court without prepaying administrative costs. To prevent abuse of this privilege, however, a court must dismiss any complaint filed *in forma pauperis* that is frivolous or malicious; fails to state a claim upon which relief can be granted; or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see also Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656 (4th Cir. 2006).

The standards for dismissal under § 1915(e)(2)(B) and Federal Rule of Civil Procedure 12(b)(6) are the same. *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003). To state a claim for relief, the plaintiff's complaint must contain (1) a short and plain statement of the grounds for the court's jurisdiction, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for the relief sought. Fed. R. Civ. P. 8(a). The complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And although they need not be "detailed," the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

A complaint achieves facial plausibility when it contains factual allegations sufficient to support a reasonable inference that the defendant is liable for the alleged misconduct. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193. The Court must assume Plaintiff's well-pleaded factual allegations to be true and determine whether they "plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950.

*Pro se* complaints are afforded a liberal construction. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006). However, the Court need not attempt "to discern the unexpressed intent of the plaintiff." *Id.* As the Fourth Circuit explained in *Beaudett v. City of Hampton*, "[t]hough [*pro se*] litigants cannot . . . be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." 775 F.2d 1274, 1276 (4th Cir. 1985).

8

## III. DISCUSSION

Before setting forth any factual allegations, the Complaint starts with a list of legal terms, statutes, regulatory provisions, and constitutional provisions. The complaint lists the following: 18 U.S.C. §§ 371, 1503, 1505, 1512, 1513, 1514, 1514A; 42 U.S.C. § 1437d; 24 C.F.R. §§ 5.859, 5.861, 5.901, 982.553; Title VI of the Civil Rights Act of 1964; the Freedom of Information Act; Conspiracy; and Due Process. Although these are largely undeveloped, the Court construes each item referenced to constitute a claim for relief. For the reasons articulated below, only the claim for violation of procedural due process rights under 42 U.S.C. § 1437d and 24 C.F.R. § 982.553 will be allowed to proceed.

### A.    24 C.F.R. §§ 5.859, 5.861, and 5.901

Title 24 of the Code of Federal Regulations concerns Housing and Urban Development. Sections 5.859, 5.861, and 5.901 govern the following aspects of the housing assistance administration respectively: (1) when there is authorization to evict tenants for criminal activity by the tenant or other covered individuals; (2) what evidence of criminal activity is needed to evict; and (3) to what criminal records and searches do the restrictions and obligations of this subpart apply. These regulations do not create private rights of action; rather, they govern the administrative procedures for public housing officials when terminating tenancy or accessing criminal records and information. As such, they cannot serve as legal grounds for

relief. Accordingly, Plaintiff's claims based upon 24 C.F.R. §§ 5.859, 5.861, and 5.901 will be dismissed.

B.  18 U.S.C. §§ 371, 1503, 1505, 1512, 1513, 1514, and 1514A

Title 18 of the United States Code concerns Crimes and Criminal Procedure. First, 18 U.S.C. §§ 1503, 1505, 1512, 1513, and 1514 are criminal statutes with no private cause of action. *See Burch v. Snider*, 461 F. Supp. 598, 602 (D. Md. 1978) ("The courts which have considered the question of whether § 1503 creates a civil cause of action have answered in the negative.") (citations omitted); *Kafele v. Frank & Wooldridge Co.*, 1108 Fed. Appx. 307, 308-09 (6th Cir. 2004) (holding appellant had no private right of action under § 1505); *Reilly v. Concentrex, Inc.*, No. CIV. 99-983-HU, 1999 WL 1285883, at *1 (D. Or. Dec. 23, 1999) (concluding there is no private civil cause of action under §§ 1512 or 1513); *Vavrina v. Parks Heating and Cooling*, No. 3:10-cv-00246, 2010 WL 2302327, at *1 (W.D.N.C. June 7, 2010) ("18 U.S.C. § 1513 is a criminal statute that does not provide a civil cause of action."); *McClure v. Menard Correctional Center*, No. 11-cv-984-JPG, 2012 WL 3062235, at *4 (S.D. Ill. July 26, 2012) ("18 U.S.C. § 1514 provides a mechanism for protecting a victim or witness in a Federal *criminal* case, not a civil rights action.").

Second, 18 U.S.C. § 371 criminalizes the act of conspiring to commit a crime against the United States; it does not create a cause of action for individuals alleging conspiracy. *Hom v. Brennan*, 840 F. Supp. 2d 576, 582 (E.D.N.Y. 2011) ("[Section]

10

371 criminalizes a conspiracy to commit any offense against or to defraud the United States, but, by its terms, does not provide for a private, civil cause of action to be brought by a private citizen for a conspiracy against such citizen.") (citation and internal quotation marks omitted).

Third, 18 U.S.C. § 1514A, the "whistleblower protection provision," creates "an administrative complaint procedure and, ultimately a federal civil cause of action, designed to protect 'the employees of publicly traded companies.'" *Carnero v. Boston Scientific Corp.*, 433 F.3d 1, 5 (1st Cir. 2006). Plaintiff does not assert this claim as an employee of a publically traded company, and therefore lacks standing to assert a claim under § 1514A.

Accordingly, Plaintiff's claims based upon 18 U.S.C. §§ 371, 1503, 1505, 1512, 1513, 1514, and 1514A will be dismissed.

C.  **Title VI of the Civil Rights Act**

Title VI actions are authorized only against institutions that receive federal funding.[5] 42 U.S.C. § 2000d. For purposes of this analysis, the Court assumes that RRHA is such an institution, given that it is an administrator of Section 8 housing vouchers, a federally subsidized housing initiative. However, Genesis, Jefferson,

---

[5] 42 U.S.C. § 2000d provides:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

11

Dieterly, and Warfield are neither individually nor collectively a "federally assisted program," 42 U.S.C. § 2000d, and therefore none of them can be held liable under Title VI. As such, the Title VI claim against them will be dismissed.

In regards to RRHA and its employees, Trotter, Williams and Grubb, Plaintiff does not allege sufficient facts to support a discrimination claim under 42 U.S.C. § 2000d. Although Plaintiff states that he is Moorish American Moslem, he makes no allegations indicating that his Section 8 voucher was terminated on the basis of his race or national origin. Plaintiff neither addresses the race or national origin of these Defendants nor does he allege specific details illustrating their discriminatory intent. *See Richardson v. Kana*, No. 1:05-CV-59 LMB BRP, 2005 WL 3682496, at *5-6, n.1 (E.D. Va. Feb. 4, 2005). Instead, Plaintiff merely concludes that their actions were discriminatory. Even under the lenient standard of construction for *pro se* plaintiffs at the 12(b)(6) stage, Plaintiff's Complaint cannot survive on legal conclusions alone. *See Iqbal*, 556 U.S. at 678. Accordingly, Plaintiff's claims under Title VI of the Civil Rights Act will be dismissed.

D.   **42 U.S.C. § 1985 Conspiracy to Interfere with Civil Rights**

"To demonstrate a violation of § 1985(3), a plaintiff must plead at least minimum factual support for the existence of a conspiracy." *Assa'Ad-Faltas v. Com. of Va.*, 738 F. Supp. 982, 986 (E.D. Va. 1989) (citing *Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir. 1972)). "A plaintiff must allege sufficient facts to give rise to an

inference of a meeting of the minds." *Id.* (citing *Munz v. Parr*, 758 F.2d 1254, 1258 (8th Cir. 1985)). "Courts have uniformly dismissed actions pursuant to § 1985(3) which contained mere conclusory claims of constitutional deprivations unsupported by factual allegations." *Id.* (quoting *Lucas v. Kale*, 364 F. Supp. 1345, 1347 (W.D. Va. 1973)). It is not enough for the complaint to offer only "bare allegations that defendants conspired . . . to file false reports and make false allegations" against the plaintiff. *Id.*

In the Complaint, Plaintiff charges the listed Defendants as well as the "Commonwealth and PWC prosecution"[6] with conspiracy to deprive him of his children or to burden him with costly litigation. These accusations are unsupported by allegations of fact; rather, they exist as mere legal conclusions. As purported evidence of this alleged conspiracy, Plaintiff cites numerous past and ongoing criminal and civil cases in which he is involved. These threadbare allegations do not "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted). Moreover, the present action aside, the lion's share of the legal actions cited are traffic, criminal, and child support matters, which do not plausibly implicate RRHA or its employees and certainly do not implicate Genesis, Jefferson, or Jefferson's employees in a conspiracy. Thus, Plaintiff's conspiracy claims under 42 U.S.C. § 1985 will be dismissed.

---

[6] Neither the Commonwealth of Virginia nor Prince William County is named as a defendant in the Complaint.

13

### E. Freedom of Information Act

Aimed at creating transparency within the Federal Government, the Freedom of Information Act ("FOIA") describes the types of information agencies must make available to the public. *See* 5 U.S.C. § 552(a). As defined by 5 U.S.C. § 551(a), "'agency' means each authority of the Government of the United States, whether or not it is within or subject to review by another agency . . . ," though there are some exceptions. None of the Defendants fits the definition of "agency" under § 551(a). Therefore, the Freedom of Information Act does not provide a cause of action for Plaintiff, and thus the FOIA claim will be dismissed.

### F. Due Process, 42 U.S.C. § 1437d, and 24 C.F.R. § 982.553

42 U.S.C. § 1437d(q)(2) reads as follows:

> Before an adverse action is taken with regard to assistance under this subchapter on the basis of a criminal record, the public housing agency shall provide the tenant or applicant with a copy of the criminal record and an opportunity to dispute the accuracy and relevance of that record.

42 U.S.C. § 1437d(q)(2). Section 1437d(q)(7)(B) states that "any tenant . . . affected by:"

> [A]ny other negligent or knowing action that is inconsistent with this subsection, may bring a civil action for damages and such other relief as may be appropriate against any public housing agency responsible for such unauthorized action. The district court of the United States in the district in which the affected applicant or tenant resides, in which such unauthorized action occurred, or in which the officer, employee, or representative alleged to be responsible for any such unauthorized action

14

resides, shall have jurisdiction in such matters. Appropriate relief that may be ordered by such district courts shall include reasonable attorney's fees and other litigation costs.

42 U.S.C. § 1437d(q)(7)(B).[7]

24 C.F.R. § 982.553 governs denial and termination of housing assistance. Subsection (d)(2) requires that, when using a criminal record as grounds for termination of assistance, the "subject of the record and the tenant [be provided] with a copy of the criminal record" and given "an opportunity to dispute the accuracy and relevance of that record."[8] 24 C.F.R. § 982.553(d)(2).

The language of both 42 U.S.C. § 1437d(q)(2) and 24 C.F.R. § 982.553(d)(2) makes clear that it is the public housing agency or authority that

---

[7] Some courts have held "that the Housing Act does not, itself, contain an express private right of action." *Sager v. Housing Com'n of Anne Arundel County*, 855 F. Supp. 2d 524, 547 (D. Md. 2012) (citing *Perry v. Hous. Auth. of City of Charleston*, 664 F.2d 1210, 1211-17 (4th Cir. 1981)). "However, the Supreme Court has held that particular provisions of the Housing Act, which provide residents of public housing with 'specific or definable rights' that are not 'beyond the competence of the judiciary to enforce,' are 'enforceable rights under . . . 42 U.S.C. § 1983.'" *Sager v. Housing Com'n of Anne Arundel County*, 855 F. Supp. 2d 524, 547 (D. Md. 2012) (quoting *Wright v. City of Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 430, 432, 107 S. Ct. 766, 93 L. Ed. 2d 781 (1987)). At this stage, a Plaintiff only need plead sufficient factual allegations to raise a right to relief that is "plausible on its face." *Twombly*, 550 U.S. at 555. The Court need not determine at present whether Plaintiff seeks to proceed on a § 1983 claim or a claim under § 1437d(q)(7)(B); rather, the Court is only concerned with whether the Complaint makes sufficient allegations to state a claim.

[8] 24 C.F.R. § 982.553 states:

> If a [Public Housing Authority ("PHA")] proposes to terminate assistance for criminal activity as shown by a criminal record, the PHA must notify the household of the proposed action to be based on the information and must provide the subject of the record and the tenant with a copy of the criminal record. The PHA must give the family an opportunity to dispute the accuracy and relevance of that record in accordance with § 982.555.

15

is responsible for providing the tenant with a copy of the criminal record on which the termination of assistance was based. RRHA employees, Williams, Grubb, and Trotter, as well as Genesis, Jefferson, and Jefferson employees, Dieterly and Warfield, are not public housing agencies or authorities as described under these sections and therefore cannot be held liable. Claims for due process violations against those Defendants will be dismissed.

According to the Complaint, Plaintiff was not given a copy of the criminal record allegedly used in RRHA's termination of his Section 8 voucher. The RRHA termination letter, dated June 26, 2013, indicates that Plaintiff's Section 8 voucher was terminated, at least in some part, due to drug-related or criminal activity. Pursuant to 42 U.S.C. § 1437d(q)(2) and 24 C.F.R. § 982.553(d)(2), RRHA had an obligation to give Plaintiff a copy of the criminal record used *before* the adverse action was taken. RRHA attempted to meet with Plaintiff on at least two occasions prior to terminating his housing assistance, but Plaintiff failed to attend both meetings. It is possible that these meetings were scheduled to discuss and provide Plaintiff with the criminal record that was being used as grounds for termination of his housing assistance. However, at this stage the Court's review is confined to the four corners of the Complaint. The Court must therefore make all reasonable inferences in the light most favorable to Plaintiff, and may not engage in speculation. Despite

the skeletal allegations, the Complaint is sufficient to survive initial review at this stage with respect to the procedural due process claim.

Therefore, Plaintiff's claim that his procedural due process rights under 42 U.S.C. § 1437d and 24 C.F.R. § 982.553 were violated by RRHA will be allowed to proceed.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's claims based on 18 U.S.C. §§ 371, 1503, 1505, 1512, 1513, 1514, and 1514A, as well as those based on 24 C.F.R. §§ 5.859, 5.861, and 5.901 will be dismissed. Likewise, Plaintiff's claim for Conspiracy and those based on Title VI of the Civil Rights Act of 1964 and the Freedom of Information Act will be dismissed. However, Plaintiff will be allowed to proceed against RRHA for its alleged violation of his procedural due process rights under 42 U.S.C. § 1437d and 24 C.F.R. § 982.553.

An Appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Dated: Aug. 8 2013
Richmond, Virginia